GEOFFREY BURKE v. CHRISTOPHER ASH and Another.[1]

January 31, 1913.

Nos. 17,875—(160).

**Negligence of servant.**
   A negligent act of a servant while engaged in the ordinary work of his

[1] Reported in 139 N. W. 705.

---

Note.—The question whether the duty of the master to instruct or warn servants is delegable is the subject of a note in 26 L.R.A.(N.S.) 624.

employment, which he knows or has reason to believe may expose a fellow servant to injury, is not necessarily an act of negligence for which the master is liable.

### Same — when master is responsible.

To render the master responsible for such an act it should appear: (1) That it was committed by the servant in the discharge of the duties assigned him by the master; and (2) by reason of the nature of the duties so assigned, and the nature and character of the employment, that it involved in some measure the absolute duties of the master respecting the safety of the other servants, for the discharge of which the master could not relieve himself by delegating the performance to the servant.

Action in the district court for Ramsey county to recover $10,000 for personal injury. The answer alleged that, if plaintiff sustained injuries, they were caused by his want of ordinary care and that he was fully informed of the physical conditions surrounding the work in which he was engaged and assumed all the risks of injury in connection therewith. The reply denied the new matter alleged in the answer. The case was tried before Hallam, J., who, at the close of the case, denied defendants' motion for an instructed verdict on the ground that it conclusively appeared from all the evidence that, if plaintiff was injured, it was due to the negligence of a fellow servant, and that he was conversant with all the physical conditions surrounding his work and assumed the risks incident thereto. The jury returned a verdict in favor of plaintiff for $4,000. From an order denying defendants' motion for judgment notwithstanding the verdict or for a new trial, they appealed. Reversed and new trial granted.

*Morton Barrows,* for appellant.

*Doyle & Burns,* for respondent.

BROWN, C. J.

Action for personal injuries, in which plaintiff had a verdict, and defendants appealed from an order denying their alternative motion for judgment or a new trial.

Plaintiff was in the employ of defendants, and, with others similarly employed, engaged in removing sand and gravel from a pit

on premises adjacent to the Central High School, then under construction, in the city of St. Paul. The pit was a large open pit, some 80 feet wide and 15 feet deep—"kind of a round pit"—as expressed by plaintiff on the trial. The sand and gravel were removed by means of a derrick operated by an engine some distance away. The engine was in charge of an employee whose operation thereof was guided and controlled by signals from another employee, who stood upon the bank near the pit and in view of the engineer. A "scale," so called, described in the evidence as a large, square box, would be lowered into the pit, filled with sand by plaintiff and his fellow workmen, and when the chains attached to the derrick boom were properly adjusted the employee upon the bank would give the necessary signal to the engineer, who in turn would set the engine in motion, raising the loaded scale, swing it into proper position and place, when it would be unloaded and returned to the pit.

On the occasion here complained of a scale had been loaded with sand by plaintiff and his fellow workmen, the boom chains attached thereto and made ready to be raised when, and without notice or warning to plaintiff, who was between the scale and the bank of the pit, and without a signal from the men in the pit, the employee on the bank gave the usual signal to the engineer to raise the load, who in response thereto set the machinery in motion, with the result that, when raised from the ground, the scale swung toward plaintiff, who had not been given an opportunity to get a safe distance away, and injured his leg.

Plaintiff thereafter brought this action to recover for the injury received, charging that it was occasioned by the negligence of defendants. The complaint alleges, among other things:

"That one of defendants' employees was stationed on the bank of said pit and in full view of all points and places in said pit, to render signals to the engineer in charge of said engine for the purpose of directing the movements and operations of said chains, boom, and derrick in the hoisting of said platforms or scales from said pit; that said pit was an ordinarily safe place in which to work; and said signalman was placed in position aforesaid to render

such signals in directing the operation of said derrick and appurtenances thereto as would maintain such safety;" and, further, "and while plaintiff was in the act of hooking one of said chains to the scale, defendant by its servant, the said signalman, did carelessly and negligently by signal given the aforesaid engineer cause said scale to be suddenly hoisted from said pit without warning to said plaintiff and before having received any signal from him, as was the custom when said scale was loaded and ready to be hoisted," in consequence of which plaintiff was injured.

The trial court submitted the case to the jury upon the theory that, though the signalman was a fellow servant of plaintiff, yet if he knew, when he gave the signal to the engineer, that plaintiff was in a position of danger and likely to be injured by starting the machinery in motion, his act in giving the signal was an act of defendants, for which they were liable. The court said to the jury that defendants were not liable for the ordinary acts of the signalman, for he was a fellow servant of plaintiff; nor were defendants liable for the mere carelessness of the signalman in giving the signal without observing plaintiff and his danger, for that also would be the act of a fellow servant; "but if Edstrom [the signalman] saw and knew that plaintiff was in a position where it would endanger his safety to raise this load without giving him warning, and if the circumstances were such that ordinary care and prudence required the plaintiff be warned before movement of the load, then failure to give such warning would be negligence for which these defendants are liable." The court had previously ruled that the pleadings and evidence presented no other ground of recovery by plaintiff, and was guided in submitting the case as stated by the decisions of this court in Berneche v. Hilliard, 101 Minn. 366, 112 N. W. 392, and Anderson v. Pittsburg Coal Co. 108 Minn. 455, 467, 122 N. W. 794, 26 L.R.A.(N.S.) 624.

We are of opinion, and so hold, that the court was in error in the instruction quoted, and that no recovery can be had upon that theory of the case.

The signalman was a fellow servant of plaintiff, and the court

below, on the evidence presented, was right in so holding. The record contains nothing to justify the conclusion that he was authorized to, or did in fact, represent the master in the discharge of any of his absolute duties to plaintiff. He testified that he was given the position of signalman by the person who employed him, but that no instructions were given relative to the duties to be performed. He was experienced in that line of work, and probably required no instructions. But, to hold the master with responsibility for his conduct, it should appear that he was, either by appointment or custom, charged with the performance of some of the personal duties of the master. He was engaged in the common employment; the signals given by him being a necessary incident to and part of the work in which all were engaged.

It is well settled that a servant, whose duty under his employment consists in giving signals, under circumstances like those here presented, is not thereby charged with the performance of the master's absolute duties, and no liability attaches to the master for a signal negligently given. 2 Labatt, Master and Servant, 607, and authorities cited.

The rule has, however, certain qualifications. If the employment be in character necessarily dangerous to the workmen, or likely to expose them to injury unless timely warned of impending danger, and thus afforded an opportunity to protect themselves, the master owes them the duty of giving the necessary warnings or signals as the situation may require. Wickstrom v. Whitney, 118 Minn. 416, 136 N. W. 1099; Savino v. Griffin Wheel Co., 118 Minn. 290, 136 N. W. 876. And again, when an "employee is at work in a place safe in itself, but which by virtue of some independent work done for the master's purposes becomes dangerous, unless prior warning of the impending danger be given, and when the master has required such notice to be given or has assumed to customarily give such warning through an employee, the person charged with that duty is a vice principal." Anderson v. Pittsburg Coal Co., 108 Minn. 455, 122 N. W. 794, 26 L.R.A.(N.S.) 624.

The case at bar does not come within either qualification of the rule stated, the complaint does not allege that the place of work

was in itself dangerous, but, on the contrary, affirmatively alleges. that it was ordinarily safe; nor is it alleged that the nature of the work, or the manner in which it was carried on, made the place unsafe. The place not being in itself dangerous, or made so by the character of the work, no duty to warn the employees arose as. a matter of law, and there was no evidence that the signalman had been directed to give warnings or signals to the men in the pit,. or to delay signaling the engineer until he had been in some. manner advised by them that all was in readiness to raise the scale. There was some evidence of a custom by which the signalman waited for a word or sign from the pit, indicating that the chains had been attached and that the men were in a safe place, before signaling the engineer. But there was a conflict in the evidence upon the question, and it was not submitted to the jury. If such a custom existed, undoubtedly the men in the pit had the right to rely upon its observance for their protection, and a violation thereof by the signalman would constitute an act of negligence for which defend- ants would be liable. Anderson v. Coal Co. supra; Wickstrom v. Whitney, 118 Minn. 416, 136 N. W. 1099. The question was not, submitted to the jury, and the evidence of the custom is far from. conclusive in plaintiff's favor.

Since, therefore, the evidence did not, taken as a whole, present a case involving a violation of any of the master's absolute duties. to plaintiff, within the rule of the cases cited, we have only to consider whether the learned trial court properly permitted a re- covery upon the theory that, if the signalman knew that his act of signaling the engineer would expose plaintiff to injury, it was. an act of negligence chargeable to defendants. We are unable to concur in that view of the law. In the absence of evidence showing a duty on the part of defendants to take affirmative action looking to the protection of the men in the pit, either because of the danger- ous character of the work, or by a previously established custom, the signalman was a fellow servant, and the signal to the engineer a. mere detail of the work.

The case of Berneche v. Hilliard, supra, when viewed in the light of the facts there before the court, does not support the view

of the trial court. What was said in that case in reference to the act of Hood in signaling the engineer, with knowledge that to do so would endanger the safety of plaintiff, was in view of the fact that Hood was the general foreman of the work, having full charge and control thereof, and presumptively charged with the performance of all the absolute duties of the master in respect to furnishing and maintaining a reasonably safe place in which the employees under his control were engaged at work. If in that case Hood had been a servant in the common employment, and not the general foreman of the work, or otherwise charged with a performance of the master's absolute duties, his act in knowingly exposing a fellow workman to injury would have been the wrong of a fellow servant, not chargeable to the master as an act of negligence. And it was because he was the general foreman, in full charge of the work, and presumptively clothed with the master's duty to maintain the place of work in reasonable safety, that we said in the Hilliard case, in effect, that if he started the derrick in motion, with knowledge that to do so would expose employees to injury, he violated the master's duty to maintain the safety of the place of work, for which the master would be liable.

A foreman or superintendent is often reduced to the rank of a fellow servant by the character of the work performed. But a servant engaged in the common employment, and clothed by the master with no special authority or discretion, is never raised by implication of law to the position of vice principal, except in those cases where he is intrusted with work of a character which necessarily involves a performance of some of the absolute duties of the master. This is illustrated by the cases heretofore cited.

Such is not, however, the case at bar. The signalman in this case was not engaged in a work which, on the evidence presented and the view in which the case went to the jury, necessarily involved any of the nondelegable duties of the master. The signals given by him were mere details of the work, not chargeable to defendants.

The order appealed from must therefore be reversed, but it is not a case for final judgment.

Order reversed, and new trial granted.

HALLAM, J., having tried the case in the court below, took no part.