### DuBOSE v. GLADDEN.

1. CLAIM AND DELIVERY—NONSUIT.—Under proof here, title to personal property claimed by personal representative of wife against vendor of husband's heir at law because he was the agent of the wife, is not sustained, and nonsuit properly granted.

2. PRESUMPTION OF AGENCY.—If agency be presumed from the fact that husband took charge of the property of the wife, that will not support the presumption that he acted as her agent in buying other property of like kind.

Before FRANK B. GARY, special Judge, Chester, November, 1905. Affirmed.

Action by Sarah F. DuBose, administratrix of Susan C. Kell, against Wm. A. Gladden. From order granting nonsuit, plaintiff appeals.

*Messrs. Halcott P. Green* and *Henry & McLure,* for appellant. *Mr. Green* cites: *Transactions between husband and wife are to be scrutinized with jealousy:* 70 S. C., 240; 10 S. C., 368; 43 S. C., 252. *If husband be general agent of wife, he cannot appropriate her property:* 43 S. C., 474. *Whether wife intended property as a gift to the husband is for jury:* 52 S. C., 371; 24 S. C., 273; 35 S. C., 554; 53 Ala., 89.

*Messrs. J. H. Marion, Glenn & McFadden* and *Caldwell & Gaston,* contra. *Mr. Marion* cites: *Property must be specially identified with that originally owned by wife:* 30 S. C., 327, 328; 18 S. C., 385; 40 S. C., 541; 24 Ency., 481. *And title shown:* 51 S. C., 569; 1 A. & E. Am. Cas., 981; 8 Rich., 28. *Possession of personal property raises presumption of ownership:* Law. Pres. Ev., 492; 2 Aik., 390. *No presumption of agency from possession:* 39 S. C., 534; 43 S. C., 477; 15 Ency., 855; Law. Pres. Ev., 341; 11 At. Rep., 645; 1 Mo. App. R., 754.

August 16, 1906. The opinion of the Court was delivered by

MR. JUSTICE GARY. This is an action in claim and delivery, to recover the possession of five mules, one portable steam engine, two cotton planters, and farming implements of the alleged value in the aggregate of $715.

At the close of the plaintiff's testimony, the defendant made a motion for a nonsuit, which was granted, on the ground that there was no testimony tending to show that the plaintiff's intestate was the owner of the property described in the complaint.

While there are several exceptions, they present, practically, but the single question, whether there was error on the part of his Honor, the presiding Judge, in granting the nonsuit on the ground just mentioned. There was testimony to the effect that Mrs. Jane Hemphill, the mother of plaintiff's intestate, departed this life in

1861, leaving a will, whereby she devised and bequeathed to her said daughter (then the wife of Dr. Wade Douglass, who died during the war), one-third of all her real and personal estate, which was not to be subject to the debts, contracts or control of her then living or any future husband. Shortly after the death of Mrs. Jane Hemphill, Mrs. Wade Douglass entered into possession of the lands devised to her, and also took possession of the personal property used for farming purposes on said lands. In 1864, Miss Mary E. Hemphill (a sister of Mrs. Douglass) died, leaving a will, by which she disposed of her real and personal property. Under the provisions of her will, Mrs. Douglass took possession of the two plantations known as the Home Place and the Rocky Creek Place. In 1866, Mrs. Dougless became the wife of B. E. Kell, who took charge of the lands in her possession, together with the stock and farming implements thereon. In 1873, an action to marshal the assets of Miss Mary E. Hemphill's estate was commenced by her executor, against Mrs. Susan C. Kell and her husband, B. E. Kell. The latter filed an answer, in which he alleged that he was the owner of the work animals, cattle and farming implements on said plantations. There does not seem to have been any specific adjudication of this claim, but there was a report by a referee, in which it was stated that Mrs. Kell was then (1873) "in possession of the personal property on said plantation, except the mules, horses, cattle and other personal property, lost or destroyed by the casualties of war, during the winter of 1865." This report was confirmed and made the judgment of the Court. Under and by virtue of the order of the Court in said action, the two plantations known as the Home Place and the Rocky Creek Place were sold, and Mrs. Kell became the purchaser thereof.

B. E. Kell died in August, 1902, and at the time of his death was in charge of the plantation known as the Home Place, and also in possession of the property described in the complaint, claiming it as his own. After his death, his nephew, Dr. B. E. Kell, took charge of the place and prop-

erty in question.   The defendant came into possession of the property in dispute under claim of right from Dr. B. E. Kell.

Mrs. Kell died in December, 1902, but did not live on said plantation after the death of her husband.   From time to time, B. E. Kell bought other stock and farming implements, some of which was used in the cultivation of said lands, as necessity required.   In fact, he bought, sold and raised stock to a considerable extent for his own profit, and, at times, became surety for his tenants when they bought stock with which to work the said lands.   There was no testimony that the mules described in the complaint were the offspring of the animals owned by Mrs. Kell, nor that the machinery or farming implements were at any time her property.

It cannot be presumed that the property described in the complaint, and that on the premises when B. E. Kell first took possession thereof, was the same, because, in the first place, such presumption would be against the laws of nature and the usual course of events, and, in the second place, the testimony shows that other animals, &c., were purchased by him, during the time he was in possession, to replenish those that had been consumed in the use, and that during the years in which the lands were rented to tenants, they owned the stock used in farming.

The main proposition upon which the appellant seems to rely is, that B. E. Kell was the agent of his wife, and that as such, he bought the stock, &c., necessary to replenish that which had been consumed in the use.   There was no direct testimony that he was her agent, nor are we able to discover any facts from which it could be legally presumed that he was acting as such, when he made the purchases from time to time.   But even if there was a presumption of agency in the first instance, in taking charge of her property, it could not be presumed that he acted as her agent in buying other property, for this would be to presume upon a presumption.

In 22 Enc. of Law, 1236, it is said: "A presumption can arise only from facts actually proven by direct evidence; one

6—75

presumption cannot form the basis for a second presumption." The reason for the rule is thus stated in the note on said page: "To hold that the fact presumed becomes an established fact, for the purpose of serving as a base for a further presumption, 'would be to spin out the chain of presumptions into the regions of the barest conjecture.' *Diel v. Missouri Pac. R. Co.*, 37 Mo. App., 454."

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.